UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIFFANY ANNE PARKES, <br><br>                 Plaintiff, <br><br>         -against- <br><br> LATCH, INC., <br><br>               Defendant. | Case No. 1:25-cv-00075 (JLR) (KHP) <br><br> <u>**OPINION AND ORDER**</u> |

JENNIFER L. ROCHON, United States District Judge:

*Pro se* plaintiff Tiffany Anne Parkes ("Plaintiff") alleges that three SIM cards were stolen from electronic devices she kept in her apartment in 2023. She brings this action against Defendant Latch, Inc. ("Latch" or "Defendant"), the manufacturer of the keyless entry system that secures the doors in her apartment building, alleging breach of the implied warranty of merchantability, §§ 2-A-212(2)(c) and 2-A-212(2)(f) of the New York Uniform Commercial Code ("U.C.C."), and a violation of her right to be secure against unreasonable searches and seizures, Article I § 12 of the Constitution of New York. *See* Dkt. 20 ("Amended Complaint," or "Am. Compl.") at 1. Plaintiff also alleges, without elaboration, that Defendant is "vulnerable to the theory of strict liability." Am. Compl. at 3. Defendant moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim. For the reasons explained below, Defendant's motion is GRANTED in full.

BACKGROUND

### I. Relevant Facts

The Court takes the following facts from the Amended Complaint. Plaintiff uses her smartphone "to unlock her apartment door via the Latch app." Am. Compl. at 2. Defendant, in its memorandum of law in support of its motion to dismiss, explains that Latch provides

"hardware and App based software for centralized building management through remote control and smart keyless entry for residents. . . .  Residents can also view the access histories to their units in the App."  Dkt. 25 ("Br.") at 1 n.1.  On January 21, 2023, Plaintiff left her apartment without that phone and, as a result, could not regain entry.  Am. Compl. at 2.  Therefore, Plaintiff went to a "concierge" at her building's front desk, who "was supposed to access the physical key" to her unit.  Am. Comp. at 2.  This key should have been stored securely in a "computerized cart that kept a record" of when it was accessed.  Am. Compl. at 2.  However, the concierge informed Plaintiff that "the system was not working" and, instead, produced "a generic, white keycard" from "an unlocked drawer at the front desk."  Am. Compl. at 2.  Plaintiff does not allege that Defendant is involved in securing this computerized cart or in tracking its access.  The concierge then "walk[ed] . . . [P]laintiff upstairs to her apartment and opened [her] door with the generic white keycard."  Am. Compl. at 2.  According to Plaintiff, "[i]t is unclear why this keycard [was] necessary as an option when Latch's systems are offline first[,] and access solutions are available from a remote location."  Am. Compl. at 3.

On January 26, 2023, Plaintiff met with "the building's property manager" because she was concerned about this keycard's unsecured storage at the front desk.  Am. Compl. at 3.  At the meeting, Plaintiff and the property manager reviewed Latch's access history for her apartment, though "[i]t is . . . unclear" to Plaintiff "why management (and the front desk staff via the computerized key cart) has the ability to view" that history.  Am. Compl. at 3.  During their review, Plaintiff and the property manager discovered a gap: "the Latch system had not recorded entrance to the . . . apartment from January 2[], 2023 to January 26[], 2023," but had resumed recording on January 27, 2023.  Am. Compl. at 3.  Latch records also did not show the concierge's entry with the generic key card on January 21, 2023, even though the building

superintendent "claimed that" it should have been reflected.  Am. Compl. at 3.  Plaintiff does not allege that the superintendent was present at her meeting with the property manager, and she does not state when or to whom the superintendent made this claim.  At the conclusion of Plaintiff's meeting with the property manager, the property manager told Plaintiff to advise him "if anything came up missing" in her apartment.  Am. Compl. at 3.

"In January and February 2023," Plaintiff "left a manual audio recorder in her apartment" and, in January 2023, "captured audio of someone entering/leaving [the unit] while she was not home."  Am. Compl. at 3.  Three SIM cards, each of which was inserted in an "electronic device[] [Plaintiff] had kept in her apartment," "went missing at the end of January/beginning of February." Am. Compl. at 2-3.  Plaintiff also "noticed clothing in her apartment that did not belong to her or the very few visitors she had."  Am. Compl. at 2.  Plaintiff does not provide the date of her audio recording, the date she noticed that the SIM cards were missing, or the date she found the clothing.  However, she alleges that she notified her property manager that these SIM cards were missing on February 21, 2023.  Am. Compl. at 3.

According to Plaintiff, the "failure of [Defendant's] systems to keep accurate record[s] of entry into [her] apartment[,] as well as the failure of its systems to reliably and accurately function as promised via its product literature" constitute Defendant's "failure . . . to fulfill a duty of care."  Am. Compl. at 2.  Since March 2023, and as a result of these "violations, defects and negligence," Plaintiff has "struggled with overwhelming irrational thoughts, severe anxiety and depression, PTSD, and has not been able to occupy enclosed spaces without feeling dreadfully unsafe and suspicious."  Am. Compl. at 3.

## II.    Procedural History

On January 3, 2025, Plaintiff filed a Complaint asserting three claims against Defendant: "violation of privacy and home," pursuant to Article 17 of the International Convention on Civil

and Political Rights ("ICCPR"), failure to "fulfill [the] duty of care" under New York General Obligations Law § 5-1505, and "theft of personal property pursuant to the U.S. Constitution's [F]ourth [A]mendment." Dkt. 1 at 1 ("Compl."). Plaintiff explained that her ICCPR claim pertained to "the unauthorized entrance of individuals into her apartment while she was absent from the space," and that her § 5-1505 claim pertained to the alleged "failure of [Defendant's] systems to keep accurate record of entry into [her] apartment as well as the failure of its systems to reliably function causing a breach of security." Compl. at 1-2.

On March 26, 2025, the Court gave Plaintiff leave to amend the Complaint, *see* Dkt. 16, and Plaintiff did so on April 1, 2025, *see generally* Am. Compl. In the Amended Complaint, Plaintiff alleges the same set of facts; however, instead of alleging that Defendant violated the ICCPR, New York General Obligations Law, and U.S. Constitution, Plaintiff now claims that Defendant violated the U.C.C. and New York Constitution. *See* Am. Compl. at 1. She further alleges that Defendant was "vulnerable to the theory of strict liability," but she does not raise a specific claim under that general theory. Am. Compl. at 3.

On May 1, 2025, Defendant moved to dismiss the Amended Complaint pursuant to Rule 12(b)(6), *see* Dkt. 23, and filed an accompanying Declaration of Joseph Iemma, Dkt. 24, and memorandum of law, Dkt. 25 ("Br."). On May 28, 2025, Plaintiff filed a "Response to Motion to Dismiss," Dkt. 29 ("Opp."), and on June 16, 2025, Defendant filed a reply, Dkt. 32 ("Reply"). Accordingly, Defendant's motion to dismiss was fully briefed on June 16, 2025. However, on June 24, 2025, Plaintiff filed a "Response in Further Opposition of Defendant's Motion to Dismiss Plaintiff's Amended Complaint," Dkt. 35 ("First Sur-Reply"), and on September 15, 2025, Plaintiff filed a "Memorandum of Law and Plaintiff's Response in Further Opposition of

Defendant's Motion to Dismiss Plaintiff's Amended Complaint," Dkt. 36 ("Second Sur-Reply"). Defendant has not objected or otherwise responded to these filings.[1]

## LEGAL STANDARD

A plaintiff's "complaint may be dismissed to the extent that it 'fail[s] to state a claim on which relief can be granted.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F. 3d 104, 110 (2d Cir. 2010) (alteration in original) (quoting Fed. R. Civ. P. 12(b)(6)). On a motion seeking such dismissal, the Court "accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor." *Santos v. Medina*, 417 F. Supp. 3d 280, 285 (S.D.N.Y. 2019). However, the Court need not accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (Sotomayor, J.) (citation omitted). Rather, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Where the plaintiff is *pro se*, her complaint "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738

---

[1] Sur-reply is not expressly permitted by Local Rule 6.1(b) or by this Court's Individual Rules, and Plaintiff did not seek the Court's permission before filing hers. However, given Plaintiff's *pro se* status and Defendant's lack of objection, the Court will consider her sur-replies "to the extent they are consistent with and merely elaborate upon the allegations in [her] pleadings." *Turner v. Dellapia*, 498 F. Supp. 3d 500, 504 n.4 (S.D.N.Y. 2020). *See, e.g.*, *Gibson v. Mount Vernon Montefiore Hosp. Exec. Dir.*, No. 22-cv-04213 (KMK), 2024 WL 1217528, at *4 (S.D.N.Y. Mar. 19, 2024) (accepting and considering plaintiff's sur-reply on motion to dismiss "in light of his pro se status"); *Saleh v. Pastore*, No. 19-cv-11799 (KPF), 2021 WL 1640449, at *3 n.5 (S.D.N.Y. Apr. 27, 2021) ("accept[ing] and consider[ing]" *pro se* plaintiff's sur-reply in accordance with court's "duty to extend special solicitude to *pro se* litigants"); *Rivera v. City of New York*, No. 16-cv-09709 (GHW), 2019 WL 252019, at *2 n.3 (S.D.N.Y. Jan. 17, 2019) (similar). Moreover, having reviewed both of Plaintiff's sur-replies, the Court concludes that they raise the same arguments, but that the Second Sur-Reply is paginated and organized in outline form. Accordingly, the Court cites only to the Second Sur-Reply in this Opinion.

F.3d 509, 515 (2d Cir. 2013); *accord Browne v. Arrow Security*, No. 24-cv-09788 (JLR), 2024 WL 5201653, at *1 (S.D.N.Y. Dec. 23, 2024). However, even *pro se* pleadings "must state a plausible claim for relief" beyond "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Caraballo v. Dep't of Corr. City of New York*, No. 22-cv-00971 (JLR), 2022 WL 16555313, at *2 (S.D.N.Y. Oct. 31, 2022) (first quoting *Hogan*, 738 F.3d at 515; and then quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)). Such pleadings "cannot withstand a motion to dismiss unless [they] contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008) (quoting *Twombly*, 550 U.S. at 545).

## DISCUSSION

As a threshold matter, Plaintiff contends that she has not brought a claim against Defendant for breach of the implied warranty of merchantability — rather, Plaintiff explains, she "brought forth a Strict Liability claim that is supported by elements of U.C.C. 2-A-212, which focuses on lessors as there is no NYS statute designated 'strict liability.'" Second Sur-Reply at 2. However, the Amended Complaint, on its face, brings a claim for a "violat[ion]" of U.C.C. § 2-A-212, which is a section of the U.C.C. concerning the implied warranty of merchantability. *See* Am. Compl. at 1. The Amended Complaint also suggests that Plaintiff seeks recovery under an undefined strict liability theory. *See* Am. Compl. at 3 ("The company promises a system independent of other keyless entry solutions that is independently managed, which makes them vulnerable to the theory of strict liability."). Construing Plaintiff's pleading liberally, so as "to raise the strongest claims that it suggests," *Hogan*, 738 F.3d at 515, the Court treats the Amended Complaint as raising claims both for breach of the implied warranty of merchantability and under a theory of strict liability.

In the same vein, the Court construes Plaintiff's citations to Article 2-A of the U.C.C. (which concerns "any transaction . . . that creates a lease," N.Y. U.C.C. § 2-A-102, and states that "a sale . . . is not a lease," *id*. § 2-A-103(1)(j)) as citations to analogous subsections of Article 2 of the U.C.C. (which concerns the sale of goods). The Court does so because Plaintiff has not provided, and the Court is not independently aware of, any theory under which Defendant could be considered a "lessor" with respect to Plaintiff on these pleaded facts. *See id*. § 2-A-103(1)(p) (defining "lessor" as "a person who transfers the right to possession and use of goods under a lease"); *id*. § 2-A-103(1) (defining "lease" as "a transfer of the right to possession and use of goods for a term in return for consideration" other than through a sale). Plaintiff's stated (and incorrect) belief that "'[l]essor' generally refers to a seller" in the U.C.C. further supports the Court's view that Plaintiff means to refer to Article 2 rather than Article 2-A. With these principles in mind, the Court turns to evaluating the sufficiency of Plaintiff's pleadings.

## I.   Breach of Implied Warranty of Merchantability

All contracts for the sale of goods by a merchant contain an implicit warranty that the goods are merchantable. N.Y. U.C.C. § 2-314(1). That implied warranty "is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013) (quoting *Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp.*, 656 N.Y.S.2d 787, 789 (App. Div. 1997); *accord Mahoney v. Endo Health Sols., Inc.,* No. 15-cv-09841 (DLC), 2016 WL 3951185, at *4 (S.D.N.Y. July 20, 2016). Importantly, however, it does not "require[] that the goods be accident-proof" or "perfect," Lewis Bass & Thomas Parker Redick, *Prods. Liab.: Design and Mfg. Defects* § 2:9 (2d ed. 2025), or that they "fulfill a buyer's every expectation," *Caronia*, 715 F.3d at 433 (alteration adopted) (quoting *Denny v. Ford Motor Co.*, 662 N.E.2d 730, 736 n.4 (N.Y. 1995)).

To state a claim for breach of the implied warranty of merchantability, a "plaintiff must allege that the product was defectively designed or manufactured, that the defect existed when the manufacturer delivered the product to the purchaser, and that the defect is the proximate cause of the plaintiff's injury." *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 513 (S.D.N.Y. 2018); *accord Fiuzzi v. Paragon Sporting Goods Co. LLC*, 181 N.Y.S.3d 544, 547 (App. Div. 2023). The plaintiff is not required, in every case, to have purchased the product from the seller — rather, "any natural person" may enforce the implied warranty, so long as "it is reasonable to expect that [the plaintiff] may use, consume or be affected by the goods and [she] is injured in person by breach of the warranty." N.Y. U.C.C. § 2-318; *see DiBartolo v. Abbott Lab'ys*, 914 F. Supp. 2d 601, 624-25, 627 (S.D.N.Y. 2012) (explaining that "the U.C.C. includes a personal injury exception," applicable to breaches of express and implied warranties, under which a plaintiff need not be in privity with the seller if she is physically injured by the product and the seller "could reasonably expect that plaintiff would 'use, consume or be affected by" the product (citation omitted)).

Here, Defendant argues that Plaintiff's claim fails for many reasons, among which is the fact that she "does not allege any specific defect or failure of the product to meet any specific warranty." Br. at 5. The Court agrees.

Plaintiff's sole pleaded allegation on this issue is that, for several weeks in January 2023, the Latch system did not accurately log entrances to her apartment, and that this "caus[ed] a breach of security which led to theft" of the SIM cards. *See* Am. Compl. at 2; *see also id.* (alleging failure of Defendant's "systems to keep accurate record of entry . . . as well as the failure of its systems to reliably and accurately function as promised via its product literature"). In other words, Plaintiff alleges that Defendant's product stopped working for a period of time,

but not that this failure was the result of a design or manufacturing defect, or that the product was unfit for its intended purpose. That is fatal to her claim. *See Tears*, 344 F. Supp. 3d at 511, 513 (dismissing implied warranty of merchantability claim where plaintiff "fail[ed] to identify any specific problem [with] or defective component [of]" the product); *Goldstein v. Sally Beauty Supply LLC*, No. 20-cv-04583 (NGG) (JRC), 2021 WL 5163235, at *4 (E.D.N.Y. Nov. 5, 2021) (dismissing implied warranty of merchantability claim where plaintiff made only "threadbare and conclusory allegation" that products "could not pass in commerce without objection"); *Fiuzzi*, 181 N.Y.S.3d at 547-48 (affirming dismissal of implied warranty of merchantability claim where plaintiff's "conclusory allegation" of dangerous and defective product was "unsupported by any factual allegation explaining how the product was not reasonably fit for its intended purpose"); *cf. Vuksanovich v. Airbus Americas, Inc.*, 608 F. Supp. 3d 92, 117 (S.D.N.Y. 2022) (finding breach of implied warranty sufficiently pleaded where plaintiff alleged that defendant's aircraft "were defectively designed because the bleed air system exposed people in the passenger cabin to unreasonably high levels of airborne toxicants").

In her opposition brief, Plaintiff argues that "[t]he product at issue was not reasonably fit for the purpose for which it was intended," in that it "was unable to perform its most essential function, securing the Plaintiff's living quarters as well as maintaining the Plaintiff's confidence that her dwelling was secure." Opp. at 3. Aside from the fact that the Amended Complaint does not so plead, Plaintiff's argument is that the Latch system did not work properly on her door during the instances she identified, but not that it was defective in design or manufacture. This is insufficient to plead a claim for breach of the implied warranty of merchantability. *See, e.g.*, *In re Sears Holdings Corp.*, 628 B.R. 402, 412 (S.D.N.Y. 2021) ("[T]he mere fact that the device did not perform as intended is not by itself indicative of a flaw in the . . . design." (omission in

original) (quoting *Bertini v. Smith & Nephew, Inc.*, No. 13-cv-00079 (BMC), 2013 WL 6332684, at *3 (E.D.N.Y. July 15, 2013))); *Velez v. Lasko Prods.*, *LLC*, 706 F. Supp. 3d 444, 460 (S.D.N.Y. 2023) (explaining that the "standard" for implied warranty "does not require that the goods be perfect . . . or that they 'fulfill a buyer's every expectation.'" (omission in original) (quoting *Caronia*, 715 F.3d at 433)).

Therefore, Plaintiff's Amended Complaint does not plead a defect in design or manufacture, and the Court dismisses Plaintiff's claim for breach of the implied warranty of merchantability.  In light of this, the Court need not reach the parties' arguments as to whether Plaintiff's allegations of "emotional injuries," Br. at 6, satisfy U.C.C. § 2-318's personal injury requirement; whether Plaintiff has sufficiently alleged a causal link between those injuries and any defect in the Latch system, which is doubtful, *see* Br. at 6-7; Opp. at 5-6; Reply at 3-5; Second Sur-Reply at 7-8; or whether Plaintiff has satisfied (or is required to satisfy) UCC § 2-607's pre-notice requirement, *see* Br. at 4-5; Opp. at 4; Reply at 2; Second-Sur-Reply at 7-8.

## II.    Strict Liability

Defendant next argues that the Court should dismiss Plaintiff's strict liability claim because "it is entirely unclear from the [Amended] Complaint on which basis Plaintiff is asserting" it, and because Plaintiff has failed to adequately plead any available strict liability theory.  Br. at 8; *see* Br. at 8-11; Reply at 5-7.  Plaintiff, in opposition, contends that her strict liability claim is based on "all three" available theories: manufacturing defect, warning defect, and design defect.  Opp. at 6.  None of these claims appears on the face of the Amended Complaint but, even if they did, Plaintiff has not stated a claim under any of them.

In New York, "there are three distinct claims for strict products liability: (1) a manufacturing defect, which results when a mistake in manufacturing renders a product that is ordinarily safe dangerous so that it causes harm; (2) a warning defect, which occurs when the

inadequacy or failure to warn of a reasonably foreseeable risk accompanying a product causes harm; and (3) a design defect, which results when the product as designed is unreasonably dangerous for its intended use." *SUEZ Water New York Inc. v. E.I. du Pont de Nemours and Co.*, 578 F. Supp. 3d 511, 558 (S.D.N.Y. 2022) (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 155-56 (2d Cir. 1997)).  The Court will address each claim in turn.

### A.  Manufacturing Defect

To sufficiently plead a manufacturing defect, a plaintiff "must allege both 'that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction,' and 'that the defect was the cause of plaintiff's injury.'"  *Tears*, 344 F. Supp. 3d at 510 (quoting *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001)).  A manufacturing defect "exists when the unit in question deviates in quality and other performance standards from all of the other identical units," and accordingly "a claim devoid of allegations that a particular unit differed when compared to others in the same product line will be dismissed."  *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 890 (E.D.N.Y. 2018) (first quoting *Colon ex rel. Molina*, 199 F. Supp. 2d at 85; and then quoting *Guariglia v. Procter & Gamble Co.*, No. 15-cv-04307 (ADS) (SIL), 2018 WL 1335356, at *5 (E.D.N.Y. Mar. 14, 2018)).

The Amended Complaint is silent as to the Latch system's manufacturing process, workmanship, and materials.  Nor does the Amended Complaint allege that Plaintiff's particular unit — that is, the lock on her particular door and the smartphone app and software connecting that lock to her smartphone — is of a lesser or otherwise different quality than all other locks that use Latch technology and all other Latch apps installed on other smartphones.  In her opposition, Plaintiff argues that adding "cyber components" to locks results in the locks "becom[ing] dangerous so that [they] cause[] harm," and she concludes that Defendant's "product was

defective due to an error in the manufacturing process, and the defect was the proximate cause of the Plaintiff's injury." Opp. at 6. Of course, these arguments are not reflected in Plaintiff's pleading. But even if they were, "[t]hese conclusory statements do not allege plausibly that [the product] was defectively manufactured" and, thus, they would not withstand Defendant's motion to dismiss. *Krulewich v. Covidien, LP*, 498 F. Supp. 3d 566, 574 (S.D.N.Y. 2020) (dismissing manufacturing defect claim where plaintiff pleaded only conclusory allegations such as "[d]efendant's [p]roduct was defective in its manufacture"); *see also Ainette v. Market Basket, Inc.*, No. 19-cv-04506 (DF), 2021 WL 1022590, at *12 (S.D.N.Y. March 16, 2021) (dismissing manufacturing defect claim where complaint "fails to allege any facts *at all* regarding the manufacturing process"); *A.F. ex rel. Fogel v. Sorin Grp. USA, Inc.*, 346 F. Supp. 3d 534, 542 (S.D.N.Y. 2018) (dismissing manufacturing defect claim where plaintiffs alleged that product "was manufactured with a material that was different from and deviated from" approved material, but "d[id] not explain what those differences were or otherwise show how the [product] or its materials deviated from the approved design" (internal quotation marks and citation omitted)). In the absence of any pleaded defect, Plaintiff also fails to adequately plead that such a defect was the proximate cause of her injury. Accordingly, the Court dismisses Plaintiff's manufacturing defect claim.

### B. Failure to Warn

"In order to recover under a failure to warn theory, a claimant must show: (1) that a manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that the failure to do so was the proximate cause of harm." *SUEZ Water*, 578 F. Supp. 3d at 562 (quoting *Quintana v. B. Braun Medical, Inc.*, No. 17-cv-06614 (ALC), 2018 WL 3559091, at *5 (S.D.N.Y. July 24, 2018) (internal quotation marks and citation omitted)). Such a duty "arises only where there is actual or constructive

notice of a danger" resulting from the foreseeable use of the product. *Morales v. Kimberly-Clark Corp.*, No. 18-cv-07401 (NSR), 2020 WL 2766050, at *8 (S.D.N.Y. May 27, 2020) (quoting *Lyman v. PetSmart, Inc.*, No. 16-cv-04627 (JCM), 2018 WL 4538908, at *10 (S.D.N.Y. Sept. 21, 2018)). Where the product does contain some form of warning, the plaintiff must plead "that the product did not contain *adequate* warnings," and, therefore, "a failure to warn cause of action is appropriately dismissed if a plaintiff does not plead facts indicating how the provided warnings were inadequate." *Goldin v. Smith & Nephew, Inc.*, No. 12-cv-09217 (JPO), 2013 WL 1759575, at *5 (S.D.N.Y. Apr. 24, 2013) (emphasis added) (first quoting *Mulhall v. Hannafin*, 841 N.Y.S.2d 282, 285 (App. Div. 2007); and then quoting *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 575 (S.D.N.Y. 2012)). Moreover, the proximate cause element of a failure to warn claim requires an allegation that the "[adequate] warning would have been heeded." *Raney v. Owens-Illinois, Inc.*, 897 F.2d 94, 96 (2d Cir. 1990).

The Amended Complaint contains no allegations concerning Defendant's duty to warn or Defendant's knowledge of dangers resulting from foreseeable uses of its product, nor does it allege that Plaintiff's injury was proximately caused by that failure to warn. The Amended Complaint is equally silent on whether Defendant provided any warning at all relating to the product Plaintiff used and, if it did, whether that warning was inadequate in some way. In her opposition, Plaintiff argues that Defendant "fails to warn purchasers/consumers of the reasonably foreseeable risks" of using their products and "[i]nstead . . . creates a false sense of security within consumers by promising/alleging that their product(s) do 'x,y,z.'" Opp. at 7. Even if this were pleaded in the Amended Complaint, it would be insufficient, inasmuch as Plaintiff does not state what warning Defendant should have given or how Plaintiff would have avoided harm by receiving such a warning. *See SUEZ Water*, 578 F. Supp. 3d at 563 (dismissing failure-to-warn

claim where "[p]laintiff [did] not allege any facts regarding what warnings should have been given" or "how, if the warnings were given, . . . the harm to [p]laintiff would have been averted").

Only on sur-reply does Plaintiff suggest that "[a] sufficient warning might read: Due to our company's failure to adhere to the norms and standards of cybersecurity as well as its failure to provide all potential users with control over access and non-cyber alternatives, the security of your private residence may be compromised." Second Sur-Reply at 10. This new argument goes well beyond merely explaining or elaborating on Plaintiff's existing allegations — thus exceeding the bounds the Court has set for its review of Plaintiff's sur-reply, *see supra* at n.1 — and in that way "serve[s] only to illustrate the deficiencies in [Plaintiff's] Amended Complaint." *Rincon v. Covidien*, No. 16-cv-10033 (JMF), 2017 WL 2242969, at *2 (S.D.N.Y. May 22, 2017) (dismissing strict liability claims where plaintiff failed to plead a defect "in either the product or, for her failure to warn theory, in [defendant]'s warnings about the product" and declining to accept new theories from opposition brief as amendment to deficient pleadings). Nor does Plaintiff explain how she would have avoided harm by receiving such a warning.

In any event, because Plaintiff has not sufficiently pleaded any defect in Defendant's product, she also fails to plead that Defendant had actual or constructive notice of that defect that would give rise to its duty to warn. This further defeats her failure-to-warn claim. *See Morales*, 2020 WL 2766050, at *8 (dismissing failure-to-warn claim where plaintiff failed to plead "non-conclusory factual allegations that indicate that [d]efendant had actual or constructive notice of a defect in the single Huggies diaper that she used"); *Rodman v. Stryker Sales Corp.*, No. 14-cv-1102 (JMF), 2014 WL 5002095, at *1 (S.D.N.Y. Oct. 7, 2014) (dismissing failure-to-warn claim where plaintiff "fails to allege a defect [giving rise to duty to warn] except in the most

conclusory terms").  For all these reasons, the Court dismisses Plaintiff's claim for failure to warn.

### C.  Design Defect

Finally, to plead a design defect claim, "a plaintiff must allege that: '(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury.'" *S.F. v. Archer Daniels Midland Co.*, 594 F. App'x 11, 12 (2d Cir. 2014) (summary order) (citation omitted); *accord Vuksanovich*, 608 F. Supp. 3d at 114.  The Amended Complaint does not satisfy these pleading requirements.

As discussed above concerning Plaintiff's implied warranty claim, the Amended Complaint contains an allegation that the Latch system stopped working, but not that this failure was the result of any design defect.  For the same reason that this allegation fails to plead a defect for purposes of the implied warranty of merchantability, it fails to plead a defect for purposes of strict liability.  *See, e.g.*, *Tears*, 344 F. Supp. 3d at 513 (noting that "[t]he facts required to demonstrate a breach of the implied warranty of merchantability are . . . very similar as those needed to support a strict products liability claim" and dismissing both claims where plaintiff insufficiently pleaded design or manufacturing defect).  The Amended Complaint also fails to plead any feasible alternative design or a causal connection between any defect and Plaintiff's injury.

In her opposition concerning her strict liability claims, Plaintiff argues that the type of lock used on her apartment door is "ordinarily very secure," but that "restricting users to app-based management of an ordinarily secure lock causes an unreasonable level of danger when using Defendant's product."  Opp. at 7; *see id*. at 6 (arguing that the lock is "ordinarily safe/secure" but "becomes dangerous" "when cyber components are added to and essential to its

functionality"). In other words, Plaintiff argues that the Latch system — indeed, by extension, any electronic lock system — inherently makes her apartment door lock unsecure. Even if Plaintiff had raised this allegation in the Amended Complaint, which she did not, it would be insufficient to allege a design defect because, "[a]s a matter of law, a product's defect is related to its condition, not its intrinsic function." *McCarthy*, 119 F.3d at 155 (quoting *Forni v. Ferguson*, 648 N.Y.S.2d 73, 74 (App. Div. 1996)); *see Surdo v. Stamina Prods., Inc.*, No. 15-cv-02532 (JG), 2015 WL 5918318, at *4 (E.D.N.Y. Oct. 9, 2018) (dismissing design defect claim where plaintiff "ma[de] only conclusory allegations that the [product] was 'inherently dangerous' and 'defective,' that its parts were 'hazardous, unsuitable,' and that it was 'defectively designed.'" (citation omitted)).

Similarly, while the Amended Complaint does not include any allegations concerning feasible alternative designs, Plaintiff does suggest three in her opposition brief. *See* Opp. at 7-8 (arguing that (1) "[t]here should not be an option to have an unregistered, generic white keycard that can open residents' doors," (2) "[t]enants should have the option of disabling the cyber component with a self-personalized code and . . . a specialized key," and (3) Defendant should use "an encrypted website as the host for its services or make their app more . . . secure"). Defendant argues that these alternative designs do not demonstrate a defect in its product but, rather, represent Plaintiff's "opinion[] that an old fashioned lock and key are superior to the Latch system." Reply at 7. Defendant further concludes that "Plaintiff's personal preference" regarding the lock systems "her landlord should use" or Defendant "should manufacture" are "irrelevant to stating a claim for products liability." *Id.*

The Court does not agree that these arguments are irrelevant to Plaintiff's strict liability claims. Indeed, a design defect claim requires that the plaintiff plead a feasible alternative

design.  *See Vuksanovich*, 608 F. Supp. 3d at 114.  But even if Plaintiff had pleaded these alternative designs in her Amended Complaint, they would be insufficient, both in the absence of a well-pleaded allegation of an underlying defect and on their own merit.

The first and second alternative designs, eliminating the master keycard and allowing tenants to bypass Latch's electronic system in favor of a personal "specialized key," would do away with primary components of the product itself and, in doing so, change its nature.  *See* Br. at 1 n.1 (explaining that Latch system is "hardware and App based software for centralized building management through remote control and smart keyless entry for residents").  In other words, these proposed alternative designs amount to "alleging that the product should not be used at all[,] [which] is insufficient to satisfy the feasible alternative design element."  *Kennedy v. Covidien, LP*, No. 18-cv-01907 (LTS) (KNF), 2019 WL 1429979, at *4 (S.D.N.Y. Mar. 29, 2019); *see SUEZ Water*, 578 F. Supp. 3d at 560-61 (dismissing design defect claim where plaintiff failed to allege that proposed safer alternative design "would serve the same function as the [allegedly defective] product[].");  *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 405 (S.D.N.Y. 2013) (dismissing design defect claim where proposed alternative design for hip-replacement system was one "that did not create metal-on-metal interaction," which was "an allegation that [defendant] could have manufactured a different product altogether").  Plaintiff's third alternative, requiring Defendant to "encrypt" its website or otherwise make its "app . . . more . . . secure," Opp. at 8, only vaguely suggests what that preferred design would entail or what product would result; at most, this is a "threadbare allegation[] that an alternative design exists, without any indication as to what that design may be," and it is therefore also insufficient. *Moore v. Madison Reed, Inc.*, No. 22-cv-00115, 2023 WL 5097966, at *10 (N.D.N.Y. Aug. 9, 2023) (dismissing design defect claim where plaintiff's pleaded alternative design was that

products could have been made "with ingredients and a formulation that did not cause adverse reactions"). Therefore, the Court dismisses Plaintiff's claim for design defect.

## III.    Violation of the New York State Constitution

Finally, Defendant seeks to dismiss Plaintiff's claim for violation of the New York State Constitution because Defendant is not a state actor or in concert with any state actor. Br. at 3-4; Reply at 1-2. Although the Amended Complaint does not include a claim under 42 U.S.C. § 1983, Defendant also argues that any such claim would fail for the same reason. *See* Br. at 3; Reply at 4. In opposition, Plaintiff contends she "has been/is being trailed and harassed by government agents," including her own cousin, and she asserts that Defendant is acting in concert with one or more state actors "[c]onsidering the Plaintiff's family's socio-political history and current powerful standing in conjunction with the invasion and overexposure of her private life within at least the past six-and-a-half years." Opp. at 2. She further argues, on sur-reply, that discovery is required in this matter "to cement the applicability of 42 U.S.C. § 1983," inasmuch as "no one with any sense or knowledge of the F.B.I./C.I.A./NYPD's history would expect" Defendant to admit that it is working in concert with a state actor. Second Sur-Reply at 5. The Court will dismiss Plaintiff's claim.

Under Article I, § 12 of the New York State Constitution, "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." N.Y. Const. art. I § 12. While that text does not contain express "language requiring State action before an individual may find refuge in its protections," *Sharrock v. Dell Buick-Cadillac*, 379 N.E.2d 1169, 1173 (N.Y. 1978), "there can be no question" that the New York State Constitution "govern[s] the rights of citizens with respect to their government and not the rights of private individuals against private individuals," *SHAD Alliance v. Smith Haven Mall*, 488 N.E.2d 1211,

1215 (N.Y. 1985). Thus, as the New York Court of Appeals has explained, Section 12 "protect[s] individuals from unreasonable *government* intrusions into their legitimate expectations of privacy." *Owner Operator Indep. Drivers Assoc., Inc. v. N.Y. State Dep't of Transp.*, 214 N.E.3d 482, 488-89 (N.Y. 2023) (emphasis added) (quoting *People v. Quackenbush*, 670 N.E.2d 434, 437 (1996)). Some private intrusions, too, fall under Section 12's protections; in assessing whether private conduct is in fact government conduct in this context, courts consider "the source of authority for the private action; whether the State is so entwined with the regulation of the private conduct as to constitute State activity; whether there is meaningful State participation in the activity; and whether there has been a delegation of what has traditionally been a State function to a private person." *Fresh Air for the Eastside, Inc. v. New York*, 217 N.Y.S.3d 381, 384-85 (App. Div. 2024) (quoting *SHAD Alliance*, 488 N.E.2d at 1217).

As Defendant's briefing suggests, however, Section 12 "is a verbatim adoption of the Fourth Amendment of the United States Constitution." *Brown v. City of New York*, 201 F. Supp. 3d 328, 332 (E.D.N.Y. 2016). As a result, violations of this section of the New York Constitution can also be remedied as violations of the United States Constitution under 42 U.S.C. § 1983. *See, e.g.*, *Domeneck v. City of New York*, No. 18-cv-07419 (PGG), 2019 WL 5727409, at *9 (S.D.N.Y. Nov. 5, 2019) ("[T]o the extent the Fourth Amendment is violated . . . , the New York Constitution is also." (quoting *Harrell v. City of New York*, 138 F. Supp. 3d 479, 486 n.12 (S.D.N.Y. 2015))); 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

19

injured.").  As with violations of the New York Constitution, however, claims brought under

Section 1983 for U.S. Constitutional violations require some form of state deprivation.  Indeed,

to state a claim under Section 1983, a plaintiff must "allege two elements: (1) 'the violation of a

right secured by the Constitution and laws of the United States,' and (2) 'the alleged deprivation

was committed by a person acting under color of state law.'"  *Vega v. Hempstead Union Free

Sch. Dist.*, 801 F.3d 72, 87-88 (2d Cir. 2015) (citation omitted).

Reading the Amended Complaint liberally to allege violations of both the New York

State and U.S. Constitution, the Court finds that both claims fail for the same reason: there is no

basis in the Amended Complaint, or even in Plaintiff's briefing on Defendant's motion to

dismiss, for the Court to conclude that Defendant is a state actor or acting under color of state

law.  The sole allegation in the Amended Complaint is that "the unauthorized entrance of

individuals into [Plaintiff's] apartment while she was absent from the space" constitutes a

"violation of privacy and home."  Am. Compl. at 2.  Plaintiff does not allege that Defendant

itself entered her home without authorization; instead, she alleges that Defendant is responsible

for the lack of record of someone else's unauthorized entrance.  *See* Am. Compl. at 2 (alleging

"the failure of Latch, Inc. to fulfill a duty of care . . .  due to the failure of its systems to keep

accurate record of entry into the plaintiff's apartment as well as the failure of its systems to

reliably and accurately function as promised via its product literature and the management

company's explanation, causing a breach of security").  Even if Plaintiff did allege that

Defendant had itself entered her apartment without authorization, her claims would still fail

because she does not allege that any governmental entity was the source of authority for,

entwined with the regulation of, or a meaningful participant in that unauthorized entry, or even

Defendant's private business dealings more generally.  Nor does she allege that any

governmental entity delegated a traditionally governmental role to Defendant concerning this unauthorized entry or Defendant's business dealings.

On opposition and sur-reply, Plaintiff offers only vague conjecture that certain government agents are "harass[ing]" her, Opp. at 2, and contends that discovery is required to assist her in connecting Defendant to that conduct, Second Sur-Reply at 5. Such allegations, even if pleaded in her Amended Complaint, are not enough to state a claim against Defendant. *See, e.g.*, *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (holding that "[a] merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity"); *Staten v. Patrolmen's Benevolent Assoc. of City of New York*, 282 F. Supp. 3d 734, 740 (S.D.N.Y. 2017) (dismissing Section 1983 claim where "plaintiff has not alleged that the defendants are state actors, and they plainly are not"); *Callaghan v. United Federation of Teachers*, 18 N.Y.S.3d 540, 540-41 (App. Div. 2015) (affirming dismissal of constitutional claim where defendant was a private entity and plaintiff made only "conclusory allegation that [defendant] acted in concert with a state actor").

Therefore, the Court dismisses Plaintiff's claim under Article I, Section 12 of the New York State Constitution. Moreover, to the extent the Court construes the Amended Complaint as raising a claim under Section 1983, the Court dismisses that claim as well.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in its entirety.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 23 and to close the

case.

Dated:  October 21, 2025
        New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge